# Representation of the United States Sentencing Commission in Litigation

The Attorney General may, consistent with 28 U.S.C. § 516, permit the United States Sentencing Commission to independently present as amicus curiae its views respecting its status and authority to a court in litigation where it has been named as a party defendant.

The Justice Department remains responsible for conducting the litigation, for representing the Sentencing Commission as a party defendant, and for exercising its own independent judgment as to the position of the United States on the merits of the issues involved.

If the Sentencing Commission chooses independently to present its views in court, it may do so only through individuals properly appointed as officers of the United States pursuant to the Appointments Clause of the Constitution.

Although any counsel appointed to present the Sentencing Commission's position would be subject to the criminal conflict of interest laws, the consequences of coverage can be mitigated somewhat for temporary or part-time employees in the executive branch by their appointment as "special government employees" under 18 U.S.C. § 202(a). Because this designation is not available for judicial branch appointees, the Sentencing Commission may wish to ask the Attorney General to appoint as a special government employee any private counsel retained by it to represent its views in court.

January 15, 1988

MEMORANDUM OPINION FOR THE DEPUTY ATTORNEY GENERAL

You have asked for our views on whether the United States Sentencing Commission may represent itself in court, through its own staff attorneys or through specially appointed counsel, in litigation involving a challenge to its authority to promulgate guidelines on sentencing. For reasons discussed more fully below, we believe that the Department may permit the Commission to present its views independently in litigation where it has been named as a party defendant. This Department, however, remains responsible for representing the interests of the United States in any such litigation.

## I. Statutory Authority and Responsibility of the Department of Justice to Represent Government Agencies in Litigation

It has been the consistent and longstanding position of this Department that, absent a clear legislative directive to the contrary, the Attorney General has plenary statutory authority and responsibility for all litigation, civil and criminal, to which the United States, its agencies, or departments, are parties. *See generally The Attorney General's Role as Chief Litigator for the United States*, 6 Op. O.L.C.

18

47 (1982). The Supreme Court has concurred in this interpretation of the statutory scheme. *See United States v. San Jacinto Tin Co.*, 125 U.S. 273 (1888); *Confiscation Cases*, 74 U.S. (7 Wall.) 454, 457–58 (1868). *See also* Griffin B. Bell, *The Attorney General: The Federal Government's Chief Lawyer and Chief Litigator, or One Among Many?*, 46 Fordham L. Rev. 1049 (1978). The Attorney General's authority over the government's litigation was first recognized in the act creating the Department of Justice, Act of June 22, 1870, ch. 150, 16 Stat. 162 (1870). It is now primarily codified in section 516 of title 28, which reserves "the conduct of litigation" involving the United States and its agencies and officers to the Attorney General and the Department of Justice, "[e]xcept as otherwise authorized by law."[1] In addition, section 3106 of title 5 prohibits executive and military departments from employing outside counsel "for the conduct of litigation" unless Congress has provided otherwise, requiring instead that the matter be referred to the Department of Justice.[2] Because of the strong policies favoring concentration of control over the government's litigation,[3] the "otherwise authorized by law" exception to section 516 has been narrowly construed to permit agencies to conduct litigation independent of the Department of Justice only where statutes explicitly so provide. *See Kern River Co. v. United States*, 257 U.S. 147, 155 (1921); *Marshall v. Gibson's Products, Inc.*, 584 F.2d 668, 676 n.11 (5th Cir. 1978); 21 Op. Att'y Gen. 195 (1895).

Over the years, Congress has enacted a number of exceptions to the Attorney General's exclusive authority to conduct the government's litigation in the lower federal courts. *See* Bell, *supra*, at 1057. In some cases, the grant of independent litigating authority is plain, in others less so;[4] in still others, an agency's ability to represent the government in court by its own counsel is made subject to the

---

[1] Section 516 provides·

> [e]xcept as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General

*See also* 28 U.S.C. § 519, which provides that, "[e]xcept as otherwise authorized by law, the Attorney General shall supervise all litigation in which the United States, an agency, or officer thereof is a party."

[2] Section 3106 has been construed by this Office to preclude payments by executive agencies to non-governmental attorneys for advisory functions in connection with litigation, as well as litigating functions. *See* Letter for Martin R. Hoffman, General Counsel, Department of the Navy, from Antonin Scalia, Assistant Attorney General, Office of Legal Counsel (Mar 26, 1975)

[3] As reflected in the congressional debates at the time the Department of Justice was created, concentration of litigating authority in the Attorney General is intended to ensure the presentation of uniform positions on important legal issues, to facilitate presidential control over executive branch policies implicated in litigation, to provide for greater objectivity in the handling of cases by attorneys who are not themselves affected litigants, to allow the selection of test cases which would present the government's position in the best possible light, and to permit more efficient handling of appellate and Supreme Court litigation. It is also intended to eliminate the need for highly-paid outside counsel when government-trained attorneys could perform the same function. *See* Cong. Globe, 41st Cong., 2d Sess., pt. IV, 3035–39, 3065–66 (1870). *See generally* Bell, *supra*; Sewall Key, *The Legal Work of the Federal Government*, 25 Va. L. Rev. 165 (1938).

[4] Some courts have regarded general "sue and be sued" clauses, or formulations such as "bring a civil action," or "invoke the aid of a court" as insufficient to confer independent litigating authority. *See, e g , ICC v. Southern Railway*, 543 F.2d 534 (5th Cir 1976); *FTC v Guignon*, 390 F.2d 323 (8th Cir. 1968)

direction and control of the Attorney General.[5] However, where Congress has not given an agency any authority to litigate through its own attorneys, the Attorney General may not transfer or delegate to it his own litigating power, through a memorandum of understanding or otherwise. *See Litigating Authority of the Office of Federal Inspector, Alaska Natural Gas Transportation System*, 4 Op. O.L.C. 820 (1980). While attorneys employed by agencies that have no litigating authority may assist Department of Justice attorneys in connection with litigation involving their agency, their role is restricted to so-called "agency counsel" functions. They may appear in court or otherwise carry out duties reserved to "officers of the Department of Justice" under section 516 only if they are given special appointments in the Department of Justice. *See Assignment of Army Lawyers to the Department of Justice*, 10 Op O.L.C. 115 (1986); Memorandum for William P. Tyson, Director, Executive Office for United States Attorneys, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Applicability of 10 U.S.C. § 973(b) to JAG Officers Assigned to Prosecute Petty Offenses Committed on Military Reservations* (May 17, 1983). In a word, section 516 requires that, absent statutory direction to the contrary, the Attorney General be the representative of the United States government in court.

Supreme Court litigation is a special case. Even where Congress has given agencies authority independent of the Attorney General to litigate in the lower courts, 28 U.S.C. § 518(a) gives the Attorney General exclusive power to represent the interests of the United States and its agencies in the Supreme Court. Section 518(a) provides that the Attorney General and the Solicitor General shall conduct and argue all suits and appeals in the Supreme Court, "[e]xcept when the Attorney General in a particular case directs otherwise." In allowing the Attorney General to "direct otherwise," section 518 does not appear to compel the same exclusivity of representation in the Supreme Court that section 516 compels for litigation in the lower courts. And on occasion the Attorney General has elected, in the exercise of his discretionary authority under section 518(a), to permit an agency to file a brief in the Supreme Court in its own name rather than have the Solicitor General represent it. In a very few cases the Attorney General has allowed an agency to make legal arguments in the Supreme Court that were inconsistent with the position asserted by the Department of Justice in the same case. Where the agency has its own litigating authority, this has been done by permitting the filing of a separate brief.[6] Where the agency does not, the only ve-

---

[5] Such statutes provide the framework for "Memoranda of Understanding" which apportion litigation responsibilities between the Department and agencies. *See generally* Paul McGrath, United States Department of Justice, Civil Division, Compendium of Departments and Agencies with Authority to Represent Themselves in Litigation (1982).

[6] *Compare* Brief for the Attorney General as Appellee and for the United States as Amicus Curiae in *Buckley v. Valeo*, 424 U.S. 1 (1976), *with* Brief for the Federal Election Commission in the same case. *See also* the discussion of the statutory provisions governing suits to set aside orders of the Interstate Commerce Commission, and the frequent resulting inconsistency in the government's Supreme Court presentations, in Robert L. Stern, *'Inconsistency' in Government Litigation*, 64 Harv. L. Rev. 759, 760–64 (1951).

hicle apparently considered appropriate for an expression of its views is the Department of Justice's brief.[7]

## II. The Attorney General's Statutory Authority To Litigate on Behalf of Entities Outside the Executive Branch

The Attorney General's authority and responsibility under 28 U.S.C. § 516 to represent the interests of the United States and its agencies in litigation extends to representation of governmental entities and officials outside the executive branch. *See, e.g., Miller v. Johnson,* 541 F. Supp. 1165, 1172 (D.D.C. 1982) (section 516 "reserves to" the Attorney General the representation of judges and other court officials sued in their official capacities, as well as "the District Court which is an agency of the United States"). *See also Senate Select Comm. on Presidential Campaign Activities v. Nixon,* 366 F. Supp. 51 (D.D.C. 1973) ("[W]hile [section 516] does not require a congressional litigant to be represented by the Justice Department, it does deny such a litigant the right to sue as the United States . . . ."). In cases where a court or one of its officials or related organizational entities is sued in its official capacity, and is in need of legal representation, the Department of Justice generally provides it.[8]

Even where the matter at issue in litigation involves the exercise by a court of some inherent Article III power, the Attorney General is the proper representative of judicial branch entities in court. *See Young v. United States ex rel. Vuitton,* 481 U.S. 787, 801 (1987) ("[A] court ordinarily should first request the appropriate prosecuting authority to prosecute contempt actions, and should appoint a private prosecutor only if that request is denied."). This conclusion respecting the Attorney General's authority under section 516 was the premise of a 1973 Comptroller General opinion that authorized the use of judicial appropriations to

---

[7] *See, e.g ,* Brief for the United States in *TVA v. Hill,* 437 U.S. 153 (1978) (appendix filed by the Secretary of the Interior, by authorization of the Attorney General, representing the separate views of the Department of the Interior), Brief in Opposition to Certiorari in *Transamerica Co. v Federal Reserve Bd ,* 340 U.S. 883 (1950) at 24–30 (views of the Treasury Department); Brief for the Department of Justice in *Railroad Retirement Bd v. Duquesne Warehouse Co.,* 326 U.S. 446 (1946) at 20–21, 84–86 (views of the Social Security Board). There have been a few rare occasions where the Attorney General has, in the exercise of his discretion, allowed two government agencies with opposing views to fight the matter out without making any presentation himself to the court, even where both agencies do not have independent litigating authority in the lower courts. *See, e.g , ICC v Inland Waterways Corp.,* 319 U.S. 671, 683 (1943) (ICC v. Secretary of Agriculture); *North Carolina v. United States,* 325 U.S. 507 (1945) (ICC v. OPA); *Meredith v Thralls,* 144 F.2d 473, *cert. denied,* 323 U.S. 758 (1944) (SEC v. RFC) *See Stern, supra,* 64 Harv. L. Rev. at 768 ("[T]he Department may feel obligated to advise the Court as to the position which, in its opinion, is correct, but may also feel loath to preclude presentation of the opposing view. If that position has been publicly stated, it will inevitably be brought to the Court's attention by one party or another, and the Court may well desire to have the position of the agency concerned stated officially.").

[8] *See, e g., Armster v United States District Court,* 792 F. 2d 1423 (9th Cir. 1986) (U.S. Attorney represented defendant district courts in suit challenging suspension of civil jury trials); *In re Fidelity Mortgage Investors,* 690 F.2d 35 (2d Cir. 1982), *cert denied,* 462 U.S. 1106 (1983) (U.S Attorney represented defendant Administrative Office of the United States Courts in suit challenging award of referees' fees under Bankruptcy Act); *Duplantier v United States,* 606 F 2d 654 (5th Cir. 1979), *cert denied,* 449 U.S 1076 (1981) (Department of Justice represented defendant Judicial Ethics Committee in suit by judges challenging financial disclosure filing requirements of Ethics in Government Act) *See also Hastings v Judicial Conference,* 829 F 2d 91 (D D C 1987), *cert. denied,* 485 U.S. 1014 (1988) (Judicial Conference and the Chief Justice represented by Department of Justice, Judicial Council for the Eleventh Circuit represented by private counsel, in suit challenging judicial disciplinary proceeding under 28 U.S.C. § 372).

21

pay private counsel where the Department of Justice had declined to provide representation to judges sued in their official capacity. *See* 53 Comp. Gen. 301, discussed *infra*. The assumption that section 516 generally obligates the Attorney General to represent judicial branch entities in court is also apparent in the history and interpretation of 28 U.S.C. § 463, the statute that conditions the authority of certain judicial branch entities and officials to pay private counsel upon the "unavailability" of Department of Justice representation. *See* S. Rep. No. 275, 97th Cong., 1st Sess. 16 (1981) ("[T]he Attorney General is responsible [under section 516] for providing the services of an attorney to a judge sued in his official capacity."); Letter for Honorable William W. Wilkins, Jr., Chairman, United States Sentencing Commission, from William R. Burchill, General Counsel, Administrative Office for United States Courts (Dec. 3, 1987) ("Burchill letter") ("[W]e believe that the Sentencing Commission, like the Administrative Office, is an agency of the United States within the meaning of [section 516].").

Thus, section 516's mandate extends to the representation of governmental agencies and officials outside the executive branch. However, the Attorney General's exclusive representational authority is subject to two exceptions in this connection. First, in the unique context of contempt prosecutions, the Supreme Court has ruled that separation of powers concerns may preclude the Attorney General from asserting exclusive authority to represent the judicial branch. In *Young*, the Supreme Court held that a court must be free to employ private counsel to prosecute contempts if the Attorney General declines to do so. *See* 481 U.S. at 801 ("If the judiciary were completely dependent on the Executive Branch to redress direct affronts to its authority, it would be powerless to protect itself if that branch declined prosecution.").[9]

Second, 28 U.S.C. § 463 contemplates that the Attorney General may voluntarily relinquish his responsibility to represent judicial entities in certain circumstances.[10] Section 463 is a statutory codification of the 1973 Comptroller

---

[9] Ordinarily, the Attorney General will accommodate a request from a court to prosecute a contempt. *See* Brief for the United States as Amicus Cunae in *United States v Providence Journal Company*, 485 U.S. 693 (1988) at 1 n.1 (the fact that the United States has an interest in the underlying litigation does not disqualify a government attorney from prosecuting a criminal contempt). If the Department is disqualified, or if it declines to prosecute in the exercise of its prosecutorial discretion, the court has inherent Article III authority to appoint a private attorney to vindicate its authority. *See Young v. United States ex rel. Vuitton*, 481 U.S. 787 (1987). Where a court exercises this inherent Article III power, the prosecution takes place entirely outside the representational framework established by section 516. In addition, the Solicitor General has recently taken the position (with which we agree) that in such cases the Attorney General's authority under section 518 does not to extend to proceedings in the Supreme Court arising out of the contempt prosecution. *See* Brief for the United States as Amicus Curiae in *United States v. Providence Journal Co., supra,* at 2 n.2 ("In light of the decision in *Young*, we believe that section 518 is best read as referring to cases in which the United States is 'interested' by virtue of the constitutional and statutory responsibilities of the Executive Branch," as opposed to "proceedings that are wholly internal to the Judicial Branch as an ancillary aspect of its powers under Article III.").

[10] This provision, couched in terms of authority to expend the judiciary's appropriation, provides:

> Whenever a Chief Justice, justice, judge, officer, or employee of any United States court is sued in his official capacity, or is otherwise required to defend acts taken or omissions made in his official capacity, and the services of an attorney for the Government are not reasonably available pursuant to chapter 31 of this title, the Director of the Administrative Office of theUnited States Courts may pay the costs of his defense. The Director shall prescribe regulations for such payments subject to the approval of the Judicial Conference of the United States.

General opinion, previously mentioned, that approved the use of the Judiciary's "miscellaneous" appropriation to pay litigation costs, including attorneys fees, where the Department of Justice had declined to provide representation to judges and court employees sued in their official capacity. *See* 53 Comp. Gen. 301 (1973).[11]

Consistent with the theory underlying section 463, the Department has in the past not objected to the retention by courts of private counsel to defend themselves in mandamus actions where the Department is disabled by reason of a conflict of interest from undertaking the representation, *see Will v. United States*, 389 U.S. 90 (1967) (mandamus action by United States resisting district court's discovery order), or is unwilling to do so for some other reason.[12] And, in *Chandler v. Judicial Council of the Tenth Circuit*, 398 U.S. 74 (1970), the Attorney General, in the exercise of his discretion under 28 U.S.C. § 518(a), allowed a judicial agency to present its own views in the Supreme Court.[13] In that case, the Attorney General permitted a judicial council to present its own defense in a mandamus action in the Supreme Court challenging its authority to discipline a district court judge. In the initial stages of this litigation, the Solicitor General represented the judicial council. Later, however, when the judicial council and the

---

[11] The Comptroller General's decision was based in part upon the awkwardness created by "having the Attorney General, an official of the executive branch of the Government, determine whether and to what extent members of institutions of a coordinate branch of the Government, the judiciary, are to be represented in litigation in which they are named as defendants or respondents." 53 Comp. Gen. at 305. Section 463 thus recognizes and gives effect to the separation of powers concerns that would be raised if the Attorney General were disabled by reason of a conflict of interest from representing judicial defendants, and unwilling at the same time to allow them to defend themselves.

[12] In a letter to the Director, Administrative Office of the United States Courts dated January 31, 1973, the Attorney General stated that "the Department cannot furnish [legal] representation to a judicial officer in a situation where the Department's interests collide with those of the judicial officer, such as in a mandamus action instituted against a judge by the Department " 53 Comp. Gen. 301, 303 (1973). In addition, the Attorney General advised:

> In our view, when no personal relief is sought against the judicial officer, such officer is no more in need of a personal defense than he would be if an appeal were taken from any of his appealable rulings. Nor is there any impropriety in counsel for one of the private litigants representing the judicial officer, as if he were defending an appeal from the officer's ruling.

*Id.*

[13] In the more recent litigation involving the Eleventh Circuit Judicial Council's investigation of Judge Alcee Hastings, the Department of Justice has represented the Judicial Conference, the Chief Justice, and the United States, while the judicial council and its investigating committee have been represented by private counsel. *See Hastings v Judicial Conference*, 829 F.2d 91 (D.C. Cir. 1987), *cert denied*, 485 U.S. 1014 (1988). In the early stages of this litigation, the Department also represented the judicial council, but after receiving the report of its investigating committee that entity chose instead to be represented by the committee's counsel, John Doar. While the court of appeals upheld the investigating committee's authority to subpoena grand jury records independent of the Attorney General, *see In re Petition to Inspect and Copy Grand Jury Materials*, 735 F 2d 1261 (11th Cir.), *cert denied*, 469 U.S. 884 (1984) ("Congress certainly never intended a judicial investigating committee [investigating charges of judicial misconduct] to be beholden to the Attorney General for permission to seek the information it needs."), the issue of the council's authority to employ private counsel to conduct litigation in the face of section 516 has not been raised or addressed by the court in this litigation. We doubt whether, in the circumstances of the Hastings litigation, the council has authority to represent itself through its own privately retained counsel since there appears to be no reason why the Attorney General is disabled from representing the judicial counsel along with the other judicial defendants. And, as will be discussed more fully in Part IV of this memorandum, serious constitutional questions are raised by allowing a judicial branch entity to represent itself in court through counsel that has not been appointed by the Attorney General.

Solicitor General were unable to reconcile their views on the merits, they filed separate briefs in the Supreme Court.[14] In sum, section 516 imposes a general prohibition against the Attorney General's delegating his own authority to conduct the government's litigation to other government agencies, including judicial branch agencies. The only recognized exceptions to this prohibition are cases where the Attorney General has declined to prosecute a criminal contempt, and where he is disabled from representing a judicial defendant because of a conflict of interest.

## III. Statutory Authority of the Sentencing Commission to Represent Itself in Litigation

We turn now to the question of the Sentencing Commission's authority to represent itself as a named defendant in litigation challenging the constitutionality of its guidelines.

The statute authorizing the establishment of the Commission and defining its authorities does not refer to the conduct of litigation or to any other authority (such as administrative enforcement power) from which one might reasonably infer that Congress intended the Commission to appear in court through its own counsel. Nor does the Commission's current appropriation statute contain any provision suggesting that it may use its funds to litigate independent of the Department. See Pub. L. No. 99–500, 100 Stat. 1783–63 (1986). The Sentencing Commission does not fall within section 463 because it is not a "chief justice, justice, judge, officer or employee of any United States court." And the unique "doctrine of necessity" exemption for contempt prosecutions created in *Young* obviously does not obtain here. The Department is willing and able to represent the Commission and, in any event, there is no constitutional "necessity" that might authorize the Commission to conduct its own defense if the Department declined to do so. In the absence of any such authority, under principles generally applicable to the conduct of litigation by government agencies, we would ordinarily be constrained to conclude that the Commission may not appear in court by its own counsel, but must be represented by the Department of Justice. This is because, as a statutory matter, the Attorney General may not delegate to the Commission or otherwise allow the Commission to assume his own authority under section 516 to conduct litigation in the name of the United States. It is our understanding, however, that the Department has no intention of abdicating to the Com-

---

[14] Charles Alan Wright filed a brief and argued on behalf of the Judicial Council that its acts were purely administrative in nature and could not be reviewed in an original proceeding in the Supreme Court. 398 U.S. at 83. The Solicitor General filed an amicus brief arguing that the Judicial Council had acted as a judicial tribunal, and that the case, therefore, fell within the Supreme Court's appellate jurisdiction. *Id* at 83–84. The Supreme Court did not decide the jurisdictional issue, holding instead that Judge Chandler had not succeeded in establishing his entitlement to a mandamus remedy. *Id* at 89.

mission any of its own responsibility under section 516 to represent the interests of the United States—including those of the Commission as a party defendant—in this litigation. And it is also our understanding that the Commission has in no sense proposed that the Department should do so. All that the Commission seeks is assurance from the Department that it will not move to strike whatever presentation the Commission may independently wish to make to the court in an amicus curiae capacity on the issue of its own constitutional status and authority. Such an independent amicus presentation would not require the Department to relinquish any of its control over the conduct of the litigation, which is all that section 516 itself requires. Under these circumstances, we believe the Attorney General may, consistent with section 516, permit the Commission to present its own views to the court. Ordinarily, of course, the Department would object to any presentation by an executive agency in court of a position in opposition to that of the Department, whether or not the agency had statutory litigating authority independent of the Department, on grounds that disputes between executive agencies should be settled not by a court but within the executive branch. *See* Memorandum for J. Paul McGrath, Assistant Attorney General, Civil Division, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel, *Re: Amicus Curiae Role of the Small Business Administration's Chief Counsel for Advocacy Under the Regulatory Flexibility Act* (May 17, 1983). This objection is grounded in the same policy considerations that underlie section 516 itself, *see supra* note 3, though it is also animated by the constitutional concern that disputes between executive agencies are constitutionally subject only to the direction and control of the President, not the courts. *See* Memorandum for F. Henry Habicht, Assistant Attorney General, Land and Natural Resources Division, from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, *Re: Response to Rep. Dingell on EPA's Ability to Sue Other Federal Agencies* (Dec. 4, 1985); Memorandum for Michael Egan, Associate Attorney General, from John M. Harmon, Assistant Attorney General, Office of Legal Counsel, *Re: EPA Litigation Against Government Agencies* (June 23, 1978).[15]

Despite the force of these policy concerns, the Attorney General has in a number of situations permitted an agency to express in court views that differed from those presented by the Department. *See supra* note 7. The constitutional issues involved in this case go to the Commission's validity under separation of powers principles. Moreover, these issues also raise questions of the extent to which the Commission is subject to the direction and control of the President. Under these very special circumstances, we believe that the Attorney General would be justified in permitting the Commission to present its own views to the court.

---

[15] The fact that two or more executive agencies may present differing views on legal issues in court papers does not raise any problem of justiciability where there are other nongovernmental parties to the controversy who are themselves truly adverse to the government. *Cf. United States v ICC*, 337 U S. 426 (1949). And, this is not a case where one executive agency is opposing another in court under authority of a statutory directive. *Compare United States v. Connecticut Nat' l Bank*, 418 U S 656 (1974) While Congress could not constitutionally deprive the President of his authority to resolve legal disputes among executive agencies, there is no constitutional reason why the President in his discretion may not authorize executive agencies to present their differing views to a court for possible resolution.

## IV. Constitutional Status of Persons Litigating on Behalf of the Commission and Applicability to them of the Conflict of Interest Laws

If the Commission chooses to present its views to the court, it could do so through its General Counsel or through private retained counsel. Depending upon the role assumed by such private counsel in the litigation, they may have to be appointed as officers of the United States and take the requisite oath of office. Representation in court of government entities—*whether executive or judicial*—is a function that can constitutionally be performed only by officers of the United States appointed in accordance with the Appointments Clause. *See Buckley v. Valeo*, 424 U.S. 1, 140 (1976) (the function of "conducting civil litigation in the courts of the United States for vindicating public rights . . . may be discharged only by persons who are 'Officers of the United States' within the language of [the Appointments Clause]."). While the question is not squarely answered by *Buckley*, we have taken the position that, as a general matter, a government agency cannot constitutionally delegate to a private party responsibility for the conduct of litigation in the name of the United States or one of its agencies. *See* Memorandum for the Deputy Attorney General, from Theodore B. Olson, Assistant Attorney General, Office of Legal Counsel (May 20, 1983) (authority to conduct government's debt collection litigation may not constitutionally be delegated to private lawyers). By the same token, we believe that an agency may not constitutionally entrust to a private party the formulation and presentation of its views on its own authority to a court. Such a responsibility can only be carried out by an official of the government who has been appointed in accordance with the Appointments Clause.[16]

Because we believe that the Sentencing Commission is an executive branch agency,[17] we also believe that the Commission can constitutionally appoint pri-

---

[16] We have taken the position that private counsel may be retained under contract without government appointments to perform certain litigating functions in connection with government debt collection, so long as they are "closely supervised and controlled" by government officials, and so long as "all final decisionmaking authority remained with duly appointed officers." *See* Memorandum for Richard K Willard, Assistant Attorney General, Civil Division, from Douglas W Kmiec, Deputy Assistant Attorney General, Office of Legal Counsel, *Re H R 4659, The Omnibus Debt Collection and Credit Management Act of 1986* (June 13, 1986) We have also emphasized that "a mere patina of supervision having no real substance would be insufficient to render lawful the delegation of executive functions to a private individual." *See* Memorandum for Phillip D. Brady, Acting Assistant Attorney General, Office of Legislative and Intergovernmental Affairs, from Ralph W Tarr, Acting Assistant Attorney General, Office of Legal Counsel, *Re Procurement Fraud Act of 1985* at 3 (Mar 29, 1985). In this context, where the Commission intends to present arguments that will address the issue of its own governmental authority, we believe that all briefs and other court filings by the Commission must be signed by an officer of the United States. Moreover, it would probably be necessary that the individual who makes an oral presentation to the court be an appointed officer of the United States On the other hand, there is no constitutional reason why private counsel may not be retained under contract to assist in the preparation of the Commission's court filings.

[17] Notwithstanding its statutory description as "an independent commission in the judicial branch," the Sentencing Commission must as a constitutional matter be regarded as within the executive branch because it performs an executive function (or, more precisely, a legislative function that can be delegated only to an executive agency). *See* Memorandum for Judge William W. Wilkins, Jr, Chairman, United States Sentencing Commission, from Charles J Cooper, Assistant Attorney General, Office of Legal Counsel (Jan. 8, 1987). *See also* Lewis J Liman, *Constitutional Infirmities of the United States Sentencing Commission*, 96 Yale L.J 1363, 1375 (1987) ("[T]o claim that the Commission is in the judiciary rather than the executive branch is simply not colorable.").

vate counsel and charge them with the performance of Article II litigating functions that are reserved under the Constitution to "officers of the United States."[18] Alternatively, the Commission could ask the Attorney General to appoint one of the Commission's own staff attorneys or private counsel as a special departmental attorney under 28 U.S.C. § 515(a), and to direct these individuals to present to the court the position favored by the Commission.[19]

If the Sentencing Commission is correct in its view of the law, and the Commission is ultimately held to be a judicial branch entity, it would have no power under the Appointments Clause to appoint counsel to exercise Article II litigating functions.[20] In this event, only the Attorney General would have authority to appoint counsel to represent the Commission in court. Accordingly, to insure against the consequences of its prevailing on the merits of this issue, the Commission may wish to ask the Attorney General to issue a parallel Department of Justice appointment to any attorney it wishes to have litigate in its name.[21] The Commission should consider this course of action not only for private counsel it may wish to employ, but also for its own General Counsel and any of his staff who perform litigating functions that, under the Constitution, can only be performed by officers of the United States.

Counsel appointed to present to the court the Commission's position would be subject to the criminal conflict of interest laws that apply to all government officers and employees. See 18 U.S.C. §§ 201–211. The consequences of this for attorneys otherwise engaged in private practice may be substantial, and include curtailment of private representations before government agencies, see 18 U.S.C. § 205, and a prohibition against sharing in any fees generated from such representations. See 18 U.S.C. § 203. These consequences may be mitigated somewhat for temporary or part-time employees in the *executive* or *legislative* branch by their appointment as "special government employees" under 18 U.S.C.

---

[18] The Commission's constitutional power under the Appointments Clause of Article II to appoint an "inferior officer" of the United States would derive from its status as a "Department "

[19] This would be a desirable course if the Commission had some concern about the extent of its own authority to appear in court through its own counsel. And we see no reason why, in these circumstances, the Attorney General should not authorize the filing of separate briefs taking inconsistent positions on the merits, even if both would be signed by attorneys holding departmental appointments There is precedent for such a course in the two briefs filed by the Department in *Buckley v Valeo*, which took different positions on the substantive legal issues involved in that case. *Compare* Brief for the Attorney General as Appellee and for the United States as Amicus Curiae *with* Brief for the Attorney General and the Federal Election Commission. The Federal Election Commission also filed a separate brief in this case *See supra* note 6. Both of the Department's briefs were signed by Attorney General Levi and Solicitor General Bork, though each was also signed by different members of the Solicitor General's staff In addition, in the recent litigation involving the validity of the Attorney General's regulatory appointment of the independent counsel under 28 C F.R. pt. 600, both the Attorney General and the independent counsel defended the validity of the appointments but made conflicting arguments on their implications. *See* Briefs filed by the Independent Counsel as Appellee and by the United States as Amicus Curiae, as well as the decision of the Court of Appeals in *In re Sealed Case*, 829 F.2d 50 (D.C. Cir. 1987) at 56 n.31.

[20] Indeed, it would have no power of appointment under that Clause at all, since it cannot by any stretch of the imagination be regarded as a "court of law."

[21] This is a course of action we have taken for several of the independent counsel appointed by the court under 28 U.S.C. § 593 to ensure their work against the possibility of a finding of unconstitutionality in pending litigation *See* 28 C.F R pt. 600, 52 Fed. Reg. 7270 (Mar 10, 1987).

27

§ 202(a).[22] However, the special designation under section 202(a) is not available for judicial branch appointees, so that they are subject to the full force of sections 203 and 205 during any period of government service, no matter how brief.

If the Commission is an executive agency, any attorney employed by the Commission on a temporary or part-time basis to litigate in its behalf could be appointed as a special government employee. 18 U.S.C. § 202(a). Such appointees would be barred from performing private representations only in matters pending before the agency in which they hold their appointment—either the Commission itself or this Department, or both, depending upon which agency appointed them, as discussed above.

For the following reasons, the Commission may wish in any event to ask the Attorney General to appoint any private counsel retained by it to represent its views in court. If the Commission is ultimately held to be a "judicial branch" entity, all of its employees, whether full-time or temporary, would be subject to the full force of the conflict of interest laws, since there is no provision in those laws for appointing "special government employees" in the judicial branch. Since the Commission would also in this event be unable constitutionally to conduct litigation through its own appointees, there may be no purpose served—and considerable hardship created—by asking private counsel to accept appointments to the Commission. In short, private counsel may prefer to accept appointment as a special government employee in the Department of Justice in order to avoid the particular difficulties that would be in store for them in accepting an appointment from the Commission if the Commission's views of its constitutional placement in the judicial branch were ultimately to prevail in court.

## Conclusion

In summary, we believe that the Attorney General may, consistent with section 516, permit the Sentencing Commission independently to present its views respecting its status and authority to a court in litigation where it has been named as a party defendant. The Department, of course, remains responsible for conducting the litigation, for representing the Commission as a party defendant, and for exercising its own independent judgment respecting the position of the United States on the merits of the issues involved. In this regard, we remain convinced that, because of its composition and powers, the Sentencing Commission can only be defended as an entity within the executive branch. If the Sentencing Com-

---

[22] Employees in the executive and legislative branches may be designated by their employing agency official as "special government employees" if their service is not expected to exceed 130 days during any period of 365 days. Individuals so designated are subject to the disabilities deriving from 18 U.S.C §§ 203 and 205 only with respect to representational activity before the particular agency in which they are employed. See 18 U.S C. §§ 203(b), 205 The impact of the conflicts laws is even further limited where "special" appointees serve no longer than 60 days. Id. While special government employees are subject to the disqualification requirements of 18 U.S.C. § 208, they are not subject to the prohibition against supplementation of federal salary in 18 U.S.C § 209

mission chooses to present to the court a contrary position on this and other related issues, it would in no way obviate the Department's continuing right and duty to present the position of the United States on them. Finally, if the Commission does choose independently to present its views in court, it may do so constitutionally only through individuals properly appointed as officers of the United States.

CHARLES J. COOPER
*Assistant Attorney General*
*Office of Legal Counsel*
